1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MEGAN SCARLETT,

              Plaintiff,

    v.

JOHN DOE, et al.,

              Defendants.

CASE NO. C19-1418JLR

ORDER ON MOTION TO
EXCLUDE EXPERT
TESTIMONY

## I.    INTRODUCTION

Before the court is Defendants Swissport Cargo Services, LP, Swissport Fueling, Inc., and Swissport USA, Inc.'s (collectively "Swissport") motion to exclude the expert opinions of Plaintiff Megan Scarlett's expert, Dr. Lowell Finkleman. (Mot. (Dkt. # 39); Reply (Dkt. # 43).) Ms. Scarlett opposes the motion. (Resp. (Dkt. # 41).) Having considered the submissions of the parties and the relevant law, the court grants in part and denies in part Swissport's motion to exclude.

1

## II.   BACKGROUND

2        This case arises out of an alleged collision on the tarmac at Seattle-Tacoma

3   International Airport ("Sea-Tac") on August 14, 2016.  (*See* FAC (Dkt. # 13) ¶ 2.1.)  Ms.

4   Scarlett, a ground services agent with Horizon/Alaska Airlines alleges that she was

5   driving a cargo tug, a small golf-cart-likevehicle, when she was rear-ended by a larger

6   "luggage carrier-type vehicle."  (*Id*.)  Ms. Scarlett alleges that both the uniform of the

7   driver, unnamed Defendant John Doe, and the vehicle he was driving displayed the

8   Swissport logo.  (*Id*.)  Ms. Scarlett alleges that the collision injured her neck and back

9   and she brings a personal injury suit against Mr. Doe and Swissport seeking damages that

10  include, among other things, medical costs, lost wages, and compensation for pain and

11  suffering.  (*See id*. ¶¶ 4.1.1-4.1.6.)  The parties agree that prior to the August 14, 2016

12  collision, Ms. Scarlett suffered neck and back issues.  (*See* Mot. at 3 (referring to disc

13  herniations discovered after Ms. Scarlett fell on her neck a year before the collision);

14  Resp. at 5 (stating that Ms. Scarlett suffered from "preexisting cervical disc disease" prior

15  to the collision).)

16        Ms. Scarlett disclosed Dr. Finkleman and his expert report on August 28, 2020.

17  (8/28/20 Disclosure (Dkt. # 35) at 2, 9-14 ("Finkleman Report").)  In his report, Dr.

18  Finkleman describes his 36 years of experience as a practicing family medicine physician

19  and his occasional assistance with surgeries, including cervical and lumbar spinal

20  surgeries.  (Finkleman Report at 1.)  He also states that he is familiar with "the charges

21  made in my profession as well as those associated with urgent care, emergency and

22  hospital medicine, radiology, physical therapy, and occupational therapy."  (*Id*.)  To

prepare his report, Dr. Finkleman "thoroughly reviewed the treatment records" for Ms.

Scarlett after the collision, including examinations and reports from various doctors who

treated Ms. Scarlett, records and billing statements for Ms. Scarlett's physical therapy,

and emergency room records and billing statements. (*Id*. at 1-2.)

Based on this review, Dr. Finkleman offers three categories of opinions. The first

category is diagnostic:

> . . . Megan Scarlett has suffered acute and rather persistent neck pain with
> right sided cervical radiculitis secondary to acute cervical strain with
> exacerbation of pre-existing cervical degenerative disk disease, acute mid
> back pain secondary to acute thoracic strain, acute and rather persistent right
> shoulder pain secondary to acute right shoulder strain and acute and rather
> persistent low back pain secondary to acute lumbar strain all as a result of
> the August 14, 2016 collision.

(*Id*. at 2.) The second category is a series of opinions that various medical and physical

therapy treatments that Ms. Scarlett received were "reasonable and necessary as a result

of the August 14, 2016 collision." (*See id.* at 3-4.) The third category is that the medical

bills for these treatments were "reasonable, usual and customary in the community for the

services provided to Ms. Scarlett. (*See id.*) Dr. Finkleman states that all opinions

expressed in his report are "made on a more probable than not basis and to a reasonable

degree of medical certainty." (*Id*. at 1)

### III.   ANALYSIS

Swissport moves to exclude Dr. Finkleman's opinions because they "are not based

on sufficient, reliable facts," and "lack foundation, are speculative, and are not the

1    products of an accepted methodology."[1]  (Mot. at 1.)  The court first lays out the

2    applicable legal standard before addressing Swissport's arguments.

3    **A.    Legal Standard**

4          "Before admitting expert testimony into evidence, the district court must perform a

5    'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under

6    Federal Rule of Evidence 702."[2]  *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183,

7    1188 (9th Cir. 2019) (citing *Daubert*, 509 U.S. 579 at 597 (1993)).  "Relevancy simply

8    requires that 'the evidence logically advance a material aspect of the party's case.'"  *Id.*

9    (citing *Estate of Barabin v. AstenJohnson, Inc*., 740 F.3d 457, 463 (9th Cir. 2014)

10   (citation and internal alterations omitted)).  Reliability "requires that the expert's

11   testimony have 'a reliable basis in the knowledge and experience of the relevant

12   discipline.'"  *Id.* (quoting *Kumho*

13

14

15         [1] Swissport also suggests that Dr. Finkleman's testimony is improperly based on hearsay
     (*see* Mot. at 1 (claiming the opinions are based "on hearsay not subject to any exceptions")), but
16   does not provide any arguments in support of this anywhere in its motion (*see generally* Mot,
     Reply).  Thus, the court will not address this argument.

17         [2] Rule 702 provides:

18       A witness who is qualified as an expert by knowledge, skill, experience, training,
         or education may testify in the form of an opinion or otherwise if:
19             (a) the expert's scientific, technical, or other specialized knowledge will
         help the trier of fact to understand the evidence or to determine a fact in issue;
20             (b) the testimony is based on sufficient facts or data;
               (c) the testimony is the product of reliable principles and methods; and
21             (d) the expert has reliably applied the principles and methods to the facts
         of the case.

22   Fed. R. Evid. 702.

*Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).  The test for reliability "'is not the correctness of the expert's conclusions but the soundness of his methodology,' and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony."  *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co*., 752 F.3d 807, 814 (9th Cir. 2014) (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010)).  The reliability analysis is "a malleable one tied to the facts of each case," and "district courts are vested with 'broad latitude' to 'decide how to test an expert's reliability' and 'whether or not an expert's relevant testimony is reliable.'"  *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922-23 (9th Cir. 2017) (quoting *Kumho Tire*, 526 U.S. at 152-53).  Although *Daubert*, 509 U.S. at 592-94, identifies several factors that may be used for evaluating the reliability of an expert—whether the scientific theory or technique has been tested, peer reviewed, identified as having a particular rate of error, and generally accepted in the scientific community—district courts are not required to consider all (or even any) of these factors, nor are they required to hold a "*Daubert* hearing."  *Barabin*, 740 F.3d at 463-64.

**B.    Dr. Finkleman's Opinions on Causation**

Swissport argues that Dr. Finkleman's opinions on causation lack foundation and are not based on sufficient facts.  (Mot. at 4-5, 9-11.)  It contends that Dr. Finkleman "must provide medical evidence showing how and to what extent the airport incident aggravated [Ms. Scarlett]'s pre-incident [condition]."  (Mot. at 9 (citing 6 *Wash. Prac., Wash. Pattern Jury Instr. Civ.* WPI 30.17 (7th ed.)).)  Since Dr. Finkleman did not review

1   any pre-incident medical records, Swissport submits that he cannot "opine on how the

2   airport incident made her condition worse." (*Id.* at 10.)  The court disagrees with the bar

3   that Swissport attempts to set for Dr. Finkleman's opinions, and finds that his opinions on

4   causation are sufficiently relevant and reliable to be heard by the jury.

5       At the outset, Swissport argues for an evidentiary standard beyond that established

6   by the rules of evidence.  The jury may eventually be tasked with determining what harm

7   Ms. Scarlett had suffered pre-collision as opposed to what harm she suffered as a result of

8   the collision.  It does not follow, however, that Dr. Finkleman "must provide medical

9   evidence showing how and to what extent" the collision aggravated any symptoms she

10  suffered.  (*See* Mot. at 9.)  Instead, his testimony must comply with the requirements of

11  Rule 702 such that it is both reliable and relevant.  Fed. R. Evid. 702; *see also*

12  *Ruvalcaba-Garcia*, 923 F.3d at 1188.  Since Swissport's motion is based on allegedly

13  insufficient facts and lack of foundation (Mot. at 9), the court examines the records that

14  comprise the bases of his opinions.

15      Dr. Finkleman, presented as a forensic records review expert, reviewed two

16  reports prepared by independent medical examiners that discussed Ms. Scarlett's

17  pre-collision condition.  (Finkleman Report at 1.)  The first report, written by Dr. Seltzer,

18  contains multiple pages of Ms. Scarlett's pre-accident medical history as it relates to her

19  neck and back based on records from medical examinations conducted between 2001 to

20  August 2, 2016.  (Lindenmuth Decl. at 2 & Ex. 3 ("Seltzer Report") at 9-11.)  Dr. Seltzer

21  also summarizes the symptoms that Ms. Scarlett recalls exhibiting prior to the collision

22  (*id.* at 12) and offers diagnoses of conditions that he believed were related the collision

1   and ones that be believed were not related (*id.* at 22).  Dr. Finkleman also reviewed a

2   report by Drs. H. Donald Lambe and Kevin Connolly.  (Finkleman Report at 1;

3   Lindenmuth Decl. at 2 & Ex. 4 ("Lambe & Connolly Report").)  This report also contains

4   a record of Ms. Scarlett's health history including prior neck and head injuries, albeit one

5   that is less extensive than Dr. Seltzer's.  (Lambe and Connolly Report at 7.)  Dr.

6   Finkleman stated in his report that he reviewed Dr. Seltzer's and Drs. Lambe and

7   Connolly's records (Finkleman Report at 1), and he also testified in his deposition that

8   the reports were quite detailed and he was impressed with their quality (Lindenmuth

9   Decl. at 2 & Ex. 2 ("Finkleman Deposition") at 27:6-28:14).

10      Swissport contends that exclusion is proper because Dr. Finkleman did not

11   personally review any of the pre-collision records or examine Ms. Scarlett himself.  (*See*

12   Mot. at 4-5, 10 (citing *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994));

13   Reply at 3-4 (citing the same).)  In *Claar*, the Ninth Circuit upheld the exclusion of two

14   experts' opinions on the medical cause of injuries based on the review of medical

15   records.  *See Claar,* 29 F.3d at 502.  There, the experts relied on the diagnosis of a doctor

16   that the plaintiff suffered from "dyscalculia" (poor arithmetic ability) and "spelling

17   dyspraxia" (poor spelling ability) and concluded they were caused by exposure to certain

18   chemicals.  *Id.*  Since neither the diagnosing doctor nor the experts examined the

19   plaintiff's school records, which indicated he had suffered from these conditions long

20   before the chemical exposure, the Court held that exclusion was proper.  *Id.*  But that is

21   not what happened here. While Dr. Finkleman did not personally review any of Ms.

22   Scarlett's medical records from before the collision or examine Ms. Scarlett himself, he

1   did review reports of doctors who had done each of those tasks and recorded their

2   findings and conclusions.  (Finkleman Report at 1.)  Dr. Finkleman also reviewed an

3   analysis of whether Ms. Scarlett's symptoms were a result of the collision or pre-existing

4   conditions and injuries.  (*See* Seltzer Report at 9-12, 22.)  Unlike the excluded expert in

5   *Claar*, Dr. Finkleman considered alternate causes, and concluded that the collision

6   exacerbated some pre-existing symptoms.  (*See* Finkelman Report at 2 (finding

7   "exacerbation of pre-existing cervical degenerative disk disease" as a result of the

8   collision).)  *Claar* does not suggest that exclusion is proper in this case.

9          It is possible that Dr. Finkleman's second-hand review means the jury should treat

10   his opinions more skeptically than if he had reviewed the pre-collision records himself.

11   But that question goes to the weight that the jury should give Dr. Finkleman's testimony.

12   Thus, the appropriate remedy is for Swissport to make these arguments at trial, not for the

13   court to exclude Dr. Finkleman's testimony.  *See Pyramid Techs.*, 752 F.3d at 813

14   ("Shaky but admissible evidence is to be attacked by cross examination, contrary

15   evidence, and attention to the burden of proof, not exclusion.") (quoting *Daubert*, 509

16   U.S. at 564).  The role of the court is "to screen the jury from unreliable nonsense

17   opinions, but not exclude opinions merely because they are impeachable."  *Id*. (quoting

18   *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)).

19   Having reviewed Dr. Finkleman's opinions, the court finds that they are supported by

20   sufficient facts and data such that they are relevant and reliable.  Thus, the court denies

21   Swissport's motion to exclude Dr. Finkleman's opinions regarding causation.

22

1    **C.      Dr. Finkleman's Opinions on Reasonableness of Medical Expenses**

2          Swissport contends that Ms. Scarlett has failed to show that Dr. Finkleman's

3    opinions on medical billing are the result of scientific, technical, or otherwise specialized

4    knowledge, are based on reliable principles and methods, and are the result of those

5    methods being applied reliably.  (Mot. at 11-12.)  The court disagrees.

6          Swissport cites *Gerlach v. Cove Apartments*, 446 P.3d 624, 633 (Wash. App. Ct.

7    2019), for the proposition that Ms. Scarlett must provide evidence beyond the medical

8    bills themselves that shows that billed amount she is claiming is reasonable and

9    customary for the community.  (Mot. at 11.)  Ms. Scarlett responds that in *Gerlach*, the

10   court found the plaintiff had complied with this requirement because she offered

11   testimony from an expert on medical billing:  Dr. Lowell Finkleman.  (Resp. at 10 (citing

12   *Gerlach*, 446 P.3d at 633 ("Gerlach met her burden to prove the reasonableness of her

13   medical expenses . . . because she presented expert testimony other than the medical

14   records and bills themselves.  Dr. Lowell Finkleman testified that the medical treatment

15   Gerlach received and the resulting charges were reasonable and customary for this

16   community and consistent with charges he had seen over the years.")).)

17         Irrespective of Dr. Finkleman's previous experience testifying as an expert on the

18   reasonableness of medical billing, the court finds that his testimony regarding medical

19   expenses complies with the requirements of Rule 702.  Dr. Finkleman possesses technical

20   or otherwise specialized knowledge as a result of his 36 years as a practicing physician

21   and the six years he has been conducting medical record reviews.  (*See* Finkleman

22   Deposition at 13:16-14:14 (estimating that Dr. Finkleman has conducted an average of

1    seven to ten medical record reviews per month since his retirement in 2014).)  It is

2    entirely proper for an expert to be qualified based on his experience.  *See Pyramid Techs.,*

3    752 F.3d at 816 ("An expert opinion is reliable if the knowledge underlying it has a

4    reliable basis in the knowledge and experience of the relevant discipline.") (internal

5    quotation marks omitted).  Dr. Finkleman has met the specialized knowledge

6    requirement.

7         Dr. Finkleman also used reliable principles that align with the categories of

8    opinions he intends to offer and applied those principles reliably.  When evaluating the

9    reliability of an expert's testimony, the court must consider the nature of the testimony

10   the expert will offer.  *See United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)

11   (noting that some traditional factors like peer review and potential error rate are "simply

12   not applicable" to testimony "whose reliability depends heavily on the knowledge and

13   experience of the expert, rather than the methodology behind it.")  Here, Dr. Finkleman is

14   offering his opinion that certain medical bills were reasonable and customary in the

15   community.  When testifying as to what is customary in a given community, it is entirely

16   appropriate for a witness to rely on his own experience both working in and reviewing

17   the work of others in that community.  *See, e.g., id.* at 1167-73 (allowing an undercover

18   cop to testify to aspects of gang culture); *see also Den Norske Bank AS v. First Nat. Bank

19   of Boston*, 75 F.3d 49, 57-58 (1st Cir. 1996) (allowing a banking executive to testify to

20   industry customs in his field).

21        Swissport makes much of Dr. Finkleman stating that he occasionally uses Google

22   searches when evaluating whether a medical bill is reasonable and customary.  (Mot. at 6,

12; (citing Finkleman Deposition at 42:5-42:18); Reply at 2, 5 (referring to same).)  But

Swissport elides two crucial points when suggesting that this, out of hand, means Dr.

Finkleman did not use reliable principles and methods.  First, Dr. Finkleman explicitly

stated that he did not Google any of the Current Procedural Technology ("CPT") codes in

this case.  (Finkleman Deposition at 42:17-18 ("Not in this case, but occasionally it'll be

something that I just don't know."))  Second, even if Dr. Finkleman had used a Google

search in this case, it would not dictate a finding that his methods are unreliable.  Dr.

Finkleman described a process where he will occasionally enter CPT codes into Google

to look up listings of the median values and standard deviations associated with that CPT

code.  (*See id*. 42:12-42:15.)  Dr. Finkleman's use of Google to access data does not

mean he is not evaluating that data based on his experience in the relevant field or using

unreliable principles or methods

Swissport has not demonstrated that Dr. Finkleman has used unreliable principles

or applied reliable principles in an unreliable manner.  The court finds that Dr.

Finkleman's testimony regarding whether certain medical bills were reasonable and

customary in the community is both relevant and reliable.  Thus, it denies Swissport's

motion to exclude this testimony.

**D.      Testimony on Chiropractic Billings**

Ms. Scarlett notes that she intends to call a different witness, Joseph W. Luke, DC,

to testify to the "reasonableness, necessity and accident-relatedness of the chiropractic

billings" associated with the accident.  (Resp. at 4.)  She admits that Dr. Finkleman

appears to have given the chiropractic records only a "cursory review," and states that she

1   clearly communicated to Swissport that she did not intend to have Dr. Finkleman opine

2   on any chiropractic records at trial.  (*Id*.)  Thus, the court grants Swissport's motion to

3   exclude testimony from Dr. Finkleman related to the "reasonableness, necessity and

4   accident-relatedness of the chiropractic billings."

5                            **IV.    CONCLUSION**

6         For the forgoing reasons, Swissport's motion to exclude Dr. Finkleman's

7   testimony (Dkt. # 39) is GRANTED solely to the extent that it seeks to exclude his

8   opinion testimony regarding the reasonableness, necessity, and accident-relatedness of

9   the chiropractic billings.  To the extent that Swissport seeks to exclude Dr. Finkleman's

10  testimony regarding causation, medical care, and medical expenses, Swissport's motion

11  is DENIED.

12        Dated this 22nd day of December, 2020.

13

14

15  _____

16  JAMES L. ROBART
    United States District Judge

17

18

19

20

21

22